**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF CHANGPENG ZHAO FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 | Case No. ___ Misc. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PETITION FOR AN ORDER TO TAKE DISCOVERY**
**FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 2

    A.    The Original Article Published by *Bloomberg Businessweek* ................................ 2

    B.    The Publication of the Original Article in the Traditional Chinese-Language Version of *Bloomberg Businessweek* .................................................................. 3

    C.    Zhao Reaches out to Modern Media Regarding the Original Article and the Translated Article's Title ................................................................................ 6

    D.    Zhao Commences Action in Hong Kong for Defamation ................................... 8

ARGUMENT .................................................................................................... 8

    A.    Legal Framework ........................................................................................ 8

    B.    Petitioner Satisfies The Statutory Requirements of 28 U.S.C. § 1782 .................. 9

        1.    Respondents Are "Found" in this District Because Their Headquarters Are in Manhattan ....................................................... 9

        2.    The Discovery Sought Is for "Use" in a Foreign Proceeding .................. 10

        3.    Petitioner Is an "Interested Person" Because He Is the Plaintiff and Aggrieved Party in the Litigation ........................................................ 12

    C.    The Discretionary Factors of Section 1782 Weigh in Favor of Permitting the Discovery Petitioner Seeks ....................................................................... 12

        1.    Discovery Should Be Granted Because Respondents Are Not Parties to the Litigation ................................................................... 13

        2.    The Hong Kong Court Will Be Receptive to the Evidence Sought ......... 13

        3.    Petitioner Does Not Seek to Circumvent Restrictions on Evidence Gathering by the Hong Kong Court ................................................... 15

        4.    The Scope of Discovery Sought by the Subpoenas Is Limited ............... 16

CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) ................................................................11

*In re Application of Esses*,
    101 F.3d 873 (2d Cir. 1996) ................................................................14

*In re Application of Imanagement Servs. Ltd.*,
    No. CIV.A. 05-2311(JAG), 2006 WL 547949 (D.N.J. Mar. 3, 2006) ....................14

*In re Ex Parte Application of Kleimar N.V.*,
    220 F. Supp. 3d 517 (S.D.N.Y. 2016) ......................................................10

*In re Application of Tianrui (Int'l) Holding Co. Ltd.*
    (JMF), 19-MC-0545, DI 102 (S.D.N.Y. Oct. 22, 2020) ..................................14

*Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
    No. 17-MC-00216 (VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) ................9

*In re Batbold*,
    No. 21-MC-218 (RA) (OTW), 2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021) ..........14

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) ................................................................15

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ........................................................8, 9, 11, 12

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002) .................................................................9

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ................................................................13

*Groupo Mex. SAB de CV v. SAS Asset Recovery, Ltd.*,
    821 F.3d 573 (5th Cir. 2016) ...............................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................. *passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ................................................................12

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ....................................................................15

*Nat'l Broad. Co. v. Bear Stearns & Co.*,
    165 F.3d 184 (2d Cir. 1999)................................................................................................10

*In re Qualcomm Inc.*,
    162 F. Supp. 3d 1029 (N.D. Cal. 2016) ..............................................................................10

*In re Republic of Ecuador*,
    Nos. C 11-80171, C 11-80172, 2011 WL 4434816 (N.D. Cal. Sep. 23, 2011)......................10

*In re Servicio Pan Americano de Proteccion*,
    354 F. Supp. 2d 269 (S.D.N.Y. 2004) .................................................................................14

*In re Super Vitaminas, S.A.*,
    No. 17-mc-80125-SVK, 2017 WL 5571037 (N.D. Cal. Nov. 20, 2017)................................10

*In re The Application of Kate O'Keeffe for Assistance Before a Foreign Tribunal*,
    No. CIV. 14-5835 WJM, 2015 WL 5039723 (D.N.J. Aug. 26, 2015), *aff'd sub*
    *nom. In re O'Keeffe*, 646 F. App'x 263 (3d Cir. 2016) ..........................................................14

*In re TPK Touch Sols. (Xiamen) Inc.*,
    No. 16-mc-80193-DMR, 2016 WL 6804600 (N.D. Cal. Nov. 17, 2016)...............................10

*Yi Feng Leather Int'l Ltd v. Tribeca Design Showroom, LLC*,
    No. 17 Civ. 05195 (AJN), 2019 WL 4744620 (2d Cir., Sept. 30, 2019)................................11

**Statutes**

28 U.S.C. § 1782................................................................................................... *passim*

Petitioner Changpeng Zhao ("Zhao") respectfully submits this Memorandum of Law in support of his Application and Petition pursuant to 28 U.S.C. § 1782 (the "Application") for an order authorizing him to obtain limited discovery from Bloomberg L.P. and Bloomberg Inc. ("Bloomberg" and, together with Bloomberg L.P., "Respondents"), each of which resides or is found in this District, for use in a pending defamation suit Zhao has brought against Modern Media Company Limited ("Modern Media CL") before the Hong Kong Court of First Instance (the "Hong Kong Court"). This application is supported by the points and authorities below and the Declaration of Kei Cheung, Hui (also known as John Hui) (the "Hui Declaration"), the Declaration of Pem Tshering (the "Tshering Declaration") and the Declaration of Natalie Ng (the "Ng Declaration") filed concurrently herewith. The Proposed Order, the subpoenas *duces tecum* to be served on Respondents (the "Subpoenas"), and the Notices of Deposition to be served on Respondents are attached as Exhibits to the Tshering Declaration.

## PRELIMINARY STATEMENT

Petitioner respectfully submits this Application pursuant to 28 U.S.C. § 1782 ("Section 1782") to seek limited and tailored discovery from Respondents for use in a pending litigation (the "Litigation") in Hong Kong for defamation.[1] Upon information and belief, Respondents have critical, relevant information related to an article published by their agents, Modern Media CL, Modern Media, and Meta Media Holdings Limited and/or Modern Media Holdings Limited (collectively, "MMH"), that contained false, malicious and defamatory statements about Zhao and his company, Binance Holdings Limited.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before foreign

---

[1] *See* Hui Declaration, ¶ 4.

tribunals. As discussed below, this Application meets the statutory requirements of Section 1782: each Respondent "resides or is found" in this District because its principal place of business is at 737 Lexington Avenue, New York, NY; the discovery sought by Petitioner is for use in and relevant to the issues at stake in a foreign proceeding; and the discovery is sought by Petitioner, the claimant in that proceeding. Moreover, each of the discretionary factors discussed by the Supreme Court in its *Intel* decision favors the discovery sought by Petitioner. Accordingly, Petitioner respectfully requests that this Court grant Petitioner's Application and permit Petitioner to serve the Subpoenas on Respondents.

## FACTUAL BACKGROUND

### A.    The Original Article Published by *Bloomberg Businessweek*

In or around March 2022, Zhao, the founder and Chief Executive Officer of Binance, was approached to have an interview with *Bloomberg Businessweek* (a magazine published by Bloomberg L.P.). Zhao agreed and was subsequently interviewed by *Bloomberg Businessweek* over the phone on or around March 11, 2022, and in-person on or around May 16, 2022.[2]

*Bloomberg Businessweek* went on to publish its article about Zhao on June 23, 2022 (the "Original Article") with the title "Can Crypto's Richest Man Stand the Cold?"[3] Surprisingly, the Original Article contained several serious and defamatory allegations made against Zhao and Binance that were completely unsubstantiated, and were obviously designed to mislead readers into believing that Zhao and Binance have been engaging in illegal or unsavory activities.[4] For example, and among other allegations:

(i)     The Original Article alleged that "[m]oney laundering, fraud, and hacking have

---

[2] *See* Ng Declaration, ¶ 4.
[3] *See* Ng Declaration at Ex. A.
[4] *See* Ng Declaration, ¶ 5.

been part of the industry's history, and even the most respectable crypto projects can seem, to the non-laser-eyed, lightly dusted with sketch." It went on to state immediately in the next sentence that "at Binance the sketchiness has a certain completeness to it."[5] This unsubstantiated statement was clearly meant to suggest to readers that Binance (and the rest of the cryptocurrency industry at large) was involved in illegal and sketchy activities such as money laundering, fraud, and hacking.

(ii)    The Original Article further claimed that "Binance, says a trader who uses the exchange, is 'a massive shitcoin casino.'"[6] No basis was provided for the allegation that Binance is a "massive shitcoin casino," and no attempts were made in the Original Article to identify or verify the identity of this supposed "trader."

(iii)    The Original Article also alleged, without basis, that "[t]oday [Binance] is, simultaneously, an exchange, a brokerage, a savings bank, a venture capital investor, a data provider, and a 'shitcoin casino' operator."[7]

**B.    The Publication of the Original Article in the Traditional Chinese-Language Version of *Bloomberg Businessweek***

The Original Article was later translated into the Chinese language and published as the cover story of the Chinese edition of *Bloomberg Businessweek*'s 250th issue (the "Translated Article") on July 6, 2022.[8] By way of background, the Chinese edition of *Bloomberg Businessweek* is published jointly by Bloomberg L.P. and the Hong Kong-listed Modern Media.[9] Publicly-available reports reveal that Modern Media Holdings Limited, the entity that was apparently given

---

[5] *See* Ng Declaration at Ex. A.
[6] *See* Ng Declaration at Ex. A.
[7] *See* Ng Declaration at Ex. A.
[8] *See* Ng Declaration at Ex. B, pp 34-41.
[9] *See* Ng Declaration at Ex. C.

the license to publish Bloomberg's content in the Chinese edition of *Bloomberg Businessweek*,[10] has since changed its name to Meta Media Holdings Limited;[11] Meta Media Holdings Limited, in turn, fully owns Modern Media CL.[12]

Notably, although the content of the Translated Article was a translation of the Original Article (and included the allegations listed above), the title of the Translated Article had also disingenuously been changed to read "趙長鵬的龐氏騙局", which directly translates to "*ZHAO Changpeng's Ponzi Scheme*" (the "Translated Article's Title"). Most damningly, the Translated Article's Title was splashed across a photograph of Zhao, which had been made the cover page of the Chinese edition of *Bloomberg Businessweek*'s 250th issue.[13] No evidence was put forth to even remotely substantiate the allegation that Zhao was involved in a Ponzi scheme.

The Chinese edition of *Bloomberg Businessweek*'s 250th issue was subsequently sent for hardcopy publication and/or circulation on or around July 6, 2022, and hardcopies of the magazine with Zhao's photograph and the Translated Article's Title on the cover were put on sale on newsstands around Hong Kong from around July 7, 2022 onwards.[14] The same magazine was also put on sale at various online websites, with the Translated Article's Title and Zhao's photograph clearly visible in the listing of the soft copy edition.[15]

That was not all. Content relating to the Translated Article was also posted on other *Bloomberg Businessweek* social media channels, including on the Facebook page and Twitter account of the Chinese edition of *Bloomberg Businessweek*. The header of the Chinese edition of *Bloomberg Businessweek*'s Facebook page was changed to display a photograph of the cover

---

[10] *See* Ng Declaration at Ex. D.
[11] *See* Ng Declaration at Ex. E.
[12] *See* Ng Declaration at Ex. F, p 162.
[13] *See* Ng Declaration at Ex. B.
[14] *See* Ng Declaration at Ex. H.
[15] *See* Ng Declaration at Ex. I.

containing Zhao's photograph and the Translated Article's Title,[16] while the Twitter account of the Chinese edition of *Bloomberg Businessweek* (@BloombergBWCN) sent a tweet which included only an image of the cover of the Chinese edition of *Bloomberg Businessweek*'s 250th issue (*i.e.*, Zhao's photograph with the Translated Article's Title), with no qualification, further content or link to the contents of the Translated Article.[17] These other social media posts by the Chinese edition of *Bloomberg Businessweek* are also defamatory (the "Defamatory Social Media Posts").[18]

The immediate social media response by the general public to the Translated Article was swift. Between July 6 and July 8, 2022, there were several social media posts referencing the Translated Article.[19] In particular, a number of users had made social media posts suggesting that Zhao had been made a "scapegoat" (translated), while others opined that the Translated Article's Title "did not look too good" (translated).[20] Some social media posts also repeated the language used in the Translated Article to suggest that Zhao and Binance were involved in a Ponzi scheme.[21]

The Translated Article was also discussed on third-party news sites, such as Blocktempo, a leading Chinese-language media outlet that discusses cryptocurrency matters. Notably, on July 17, 2022, Blocktempo published an article on its website with the headline "The Chinese edition of *Bloomberg Businessweek* changes the headline 'ZHAO Changpeng's Ponzi Scheme'! What secrets did they discover about Binance?" (translated).[22]

---

[16] *See* Ng Declaration at Ex. J.
[17] *See* Ng Declaration at Ex. G.
[18] *See* Ng Declaration, ¶ 9.
[19] *See* Ng Declaration, ¶ 10.
[20] *See* Ng Declaration at Ex. K.
[21] *See* Ng Declaration at Ex. K.
[22] *See* Ng Declaration at Ex. L.

C.    **Zhao Reaches out to Modern Media Regarding the Original Article and the Translated Article's Title**

Given the immediate damage caused by the allegations in the Original Article read with the Translated Article's Title on Zhao's reputation, Zhao took immediate steps to reach out to the editors of *Bloomberg Businessweek* and Modern Media for remedial action.[23] In that regard, on July 6, 2022, Binance's Chief Communications Officer, Patrick Hillmann, reached out to *Bloomberg Businessweek*'s editor, Joel Weber, regarding the Translated Article's Title in the Chinese edition of *Bloomberg Businessweek*.[24]

Weber responded to Hillmann's email on the same day to state, among other things, that the Chinese edition of *Bloomberg Businessweek* is "published by Modern Media out of China." He further noted that his understanding was that they had removed the social media posts publicizing the Translated Article's Title from their social media accounts, and that they were "updating their display language."[25] Weber then proceeded to state that he hoped that Hillmann would see the issue as "resolved based on Modern Media's response," but that, if Hillmann saw "a need to press this issue, [he] should reach out to Modern Media directly."[26]

Hillmann replied to Weber's response on July 7, 2022, noting that the social media posts were still posted in various places including the Facebook page of the Chinese edition of *Bloomberg Businessweek*, and that the Translated Article's Title was still being featured across multiple websites where the Chinese edition of *Bloomberg Businessweek* was being sold online.[27]

On July 7, 2022, Slateford Law, on behalf of Zhao, wrote to Modern Media HK regarding, among other things, the Defamatory Social Media Posts and the allegations made in the Original

---

[23] *See* Ng Declaration, ¶ 12.
[24] *See* Ng Declaration at Ex. M.
[25] *See* Ng Declaration at Ex. N.
[26] *See* Ng Declaration at Ex. N.
[27] *See* Ng Declaration at Ex. N.

Article and the Translated Article's Title.[28] Among other things, Zhao demanded that Modern Media HK:

> (i)     retract the story;
>
> (ii)    remove all online versions of the Original Article and the Translated Article;
>
> (iii)   recall all physical publications of the Original Article and the Translated Article; and
>
> (iv)    remove the Defamatory Social Media Posts immediately.[29]

Modern Media CL responded to Slateford Law's letter on July 8, 2022, via their attorneys, Yuen & Partners.[30] In its response, Yuen & Partners stated that Modern Media CL had, on a without admission of wrongdoing basis, taken steps to delete the Defamatory Social Media Posts and had purportedly recalled the physical publication of the Translated Article within Hong Kong.[31] No response has been received to date from Modern Media HK.

Further to the response from Yuen & Partners, the Defamatory Social Media Posts were deleted, and physical copies of the Translated Article had purportedly been recalled within Hong Kong.[32] However, the 250th issue of the Chinese edition of *Bloomberg Businessweek* was still on sale on various online websites,[33] albeit with the Translated Article's Title being amended to read "神秘的趙長鵬", which directly translates to "The Mysterious Zhao Changpeng." [34]

Given that the remedial steps requested had not been fully complied with by Modern Media CL, Sidley Austin LLP responded to Yuen & Partners letter on Zhao's behalf on July 12, 2022.[35] In this letter, Sidley Austin LLP requested Modern Media HK and Modern Media CL to take

---

[28] *See* Ng Declaration at Ex. O.
[29] *See* Ng Declaration at Ex. O.
[30] *See* Ng Declaration at Ex. P.
[31] *See* Ng Declaration at Ex. P.
[32] *See* Ng Declaration, ¶ 17.
[33] *See* Ng Declaration at Ex. Q.
[34] *See* Ng Declaration at Ex. Q.
[35] *See* Ng Declaration at Ex. R.

further remedial action by, among other things, retracting the story; publishing a full and proportionately prominent apology; and withdrawing the allegations made against Binance and Zhao.[36] No response has been received to date from Modern Media HK.

### D.    Zhao Commences Action in Hong Kong for Defamation

As Modern Media had failed to take the remedial steps Zhao requested or otherwise adequate remedial steps, Zhao proceeded to instruct Hong Kong counsel to file an action before the Hong Kong Court on July 25, 2022 against the Respondents' affiliate based in Hong Kong—namely, Modern Media CL.[37]  The action asserts claims for defamation.[38]

## ARGUMENT

### A.    Legal Framework

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending or reasonably contemplated foreign proceeding. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

An application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). If the three statutory requirements are satisfied, a court may consider discretionary factors in deciding whether to grant a Section 1782 application, including (1) whether discovery is sought from a participant in the foreign proceeding who is accessible absent Section 1782 aid; (2) the

---

[36] *See* Ng Declaration at Ex. R.
[37] *See* Hui Declaration at Ex. E.
[38] *See* Hui Declaration at Ex. E.

nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the tribunal to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *Id.* at 80-81 (citing *Intel*, 542 U.S. at 264-65).

Both the Supreme Court and this Court have acknowledged that Congress intended to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See*, *e.g.*, *Intel*, 542 U.S. at 247-48; *see also Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability.") (internal citation omitted); *see also In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly …").

### B.    Petitioner Satisfies The Statutory Requirements of 28 U.S.C. § 1782

Petitioner satisfies the three statutory requirements of Section 1782: (1) each Respondent is "found" in the Southern District of New York; (2) the requested information is for "use" in a foreign proceedings; and (3) Petitioner is an "interested person" as the claimant in that foreign proceeding.

### 1.    Respondents Are "Found" in this District Because Their Headquarters Are in Manhattan

Both Respondents satisfy the first statutory prong of Section 1782 because they maintain their principal place of business within this District and engage in the sort of systematic and continuous activities that courts have considered sufficient to allow a foreign corporation to be "found" in a district for purposes of Section 1782.  A corporation is "found" in the District where it is "essentially at home." *See Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 17MC521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018). Courts have

looked to a corporation's principal place of business to determine where it is "essentially at home." *Id.*; *see also Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-00216 (VEC), 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("[A] corporation is 'at home' for the purpose of constitutional due process only in a state that is the corporation's place of incorporation or its principal place of business."). In addition, Courts in this District have typically held that an entity is "found" in this District if it has a "systematic and continuous" presence here. *See In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016) (defendant that conducted "systematic and regular business" in New York was "found" in this District).[39]

Here, Respondents maintain their principal place of business within the Southern District of New York and conduct systematic and continuous business here. Indeed, according to Bloomberg Inc.'s registered entity information with the Department of State, its "principal office and place of business" is located at 731 Lexington Avenue, New York, New York.[40] Bloomberg L.P.'s sole general partner is Bloomberg Inc.[41] Thus, Respondents are "found" in this District.

2.    The Discovery Sought Is for "Use" in a Foreign Proceeding

The Litigation is a foreign proceeding for purposes of Section 1782. "Proceeding[s] in a foreign or international tribunal" include adjudicative proceedings before foreign courts,

---

[39] Courts in other circuits take the same approach. *See, e.g.*, *Grupo Mex. SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573, 575 (5th Cir. 2016) (Cayman Islands company "indisputably 'resides or is found in' the district" based on fact that it had office space and personnel there); *In re Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (corporation "found" in district "because it maintains two offices in this [d]istrict"); *In re TPK Touch Sols. (Xiamen) Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (corporation "maintains an office in this district and is 'found' here for purposes of Section 1782"); *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) ("Through these in-district offices, [the corporations] conduct systematic and continuous local activities and thus may be found within the Northern District for the purposes of Section 1782.") (internal quotation marks omitted); *In re Republic of Ecuador*, Nos. C 11-80171, C 11-80172, 2011 WL 4434816, at *2 (N.D. Cal. Sep. 23, 2011) (corporation "found" in district because it "maintains an office … in this district").

[40] *See* Tshering Declaration at Ex. G.

[41] *See* Tshering Declaration at Ex. F.

administrative and quasi-judicial proceedings, foreign criminal investigations, and governmental entities acting as state instrumentalities or "with the authority of the state." *See Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 189 (2d Cir. 1999); *see also In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 460-61 (2d Cir. 2014).

The Hong Kong Court of First Instance, before which the Litigation is pending, is a foreign court within the definition of Section 1782.[42]   Thus, the Hong Kong Court operates with the authority of the territory of Hong Kong. Courts in the Second Circuit have enforced judgements issued by Hong Kong courts. *See Yi Feng Leather Int'l Ltd v. Tribeca Design Showroom, LLC*, No. 17 Civ. 05195 (AJN), 2019 WL 4744620, at *2 (2d Cir., Sept. 30, 2019) ("Moreover, New York courts have previously enforced Hong Kong judgments, treating the sufficiency of the Hong Kong legal system as a settled matter.").

To establish that the information sought is for "use" in a foreign proceeding, it is sufficient to show that Petitioner has "the procedural right to submit the requested documents to" the foreign court. *See In re Accent Delight Int'l Ltd*., 869 F.3d 121, 132 (2d Cir. 2017). Petitioner is not required to show that the information sought would be discoverable or admissible in the foreign proceedings. *See Brandi-Dohrn*, 673 F.3d at 82 ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application.") (emphases in original). Petitioner plainly satisfies the "use" requirement. Petitioner bears the burden of proof on his claims in the Litigation,[43] and to meet that burden, Hong Kong law permits the submission of

---

[42] *See* Hui Declaration, ¶ 8.
[43] *See* Hui Declaration, ¶ 12.

documentary and other evidence such as the documents requested here.[44]

The Subpoenas seek documents related to Respondents' acts and omissions in relation to the Original Article; notice of, acts and omissions in relation to the Translated Article's Title and content; Respondents' relationship with MMH and control over Bloomberg content published by MMH; and efforts taken, if any, to remediate the actions.[45]  A media organization of the size and repute of Bloomberg L.P. is expected to have internal processes that conduct due diligence and quality control processes to ensure a certain uniform standard is maintained across its publications worldwide. Therefore, Respondents likely have in their possession and control documents highly material to the Litigation, including on the subjects of, *inter alia*, Modern Media's inclusion of the defamatory Translated Article's Title.

### 3.      Petitioner Is an "Interested Person" Because He Is the Plaintiff and Aggrieved Party in the Litigation

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings. While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, *see Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256 (internal citation omitted). Petitioner is the applicant in the Litigation and is therefore an "interested person" under Section 1782.

### C.      The Discretionary Factors of Section 1782 Weigh in Favor of Permitting the Discovery Petitioner Seeks

Once the statutory requirements of Section 1782 are met, a court may consider four

---

[44] *See* Hui Declaration, ¶ 12.
[45] *See* Tshering Declaration at Ex. B and Ex. C.

discretionary *Intel* factors. *See Brandi-Dohrn*, 673 F.3d at 80-81. Here, each of these factors weighs in favor of granting the requested discovery. *First*, Respondents are not parties to the Litigation, and, therefore, this discovery could not be sought there. *Second*, there is no reason to believe that the Hong Kong Court would be unreceptive to evidence obtained through Section 1782 discovery; on the contrary, the case will be a fact-intensive proceeding to which the discovery sought is directly relevant. *Third*, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence. *Fourth*, the requests are carefully circumscribed and targeted to key questions in the Litigation so as to avoid undue burden on Respondents.

### 1. Discovery Should Be Granted Because Respondents Are Not Parties to the Litigation

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 244. Here, Respondents are not parties to the Litigation.[46]

### 2. The Hong Kong Court Will Be Receptive to the Evidence Sought

Under the second *Intel* factor, a court looks to whether the foreign tribunal would be receptive to evidence obtained through Section 1782.

There is a strong presumption that foreign courts and tribunals will be receptive to evidence obtained in the United States. The Second Circuit has held that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *See Euromepa, S.A. v. R. Esmerian, Inc.*, 51

---

[46] *See* Hui Declaration, ¶ 11.

F.3d 1095, 1102 (2d Cir. 1995). A court should only deny discovery on the basis of lack of receptiveness where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added).

In this case, there is no such authoritative proof. In fact, Hong Kong law permits Hong Kong courts to receive a broad range of evidence, including evidence obtained from Section 1782 proceedings.[47] Indeed, a party in a Hong Kong legal proceeding is not prohibited from using or acquiring documentary evidence obtained via 28 U.S.C. § 1782.[48]

Courts have also found that Hong Kong courts *are* receptive to American federal judicial assistance. The Second Circuit has upheld a Section 1782 application for evidence for use in a Hong Kong lawsuit. *See In re Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (finding "no [] authoritative evidence that the Hong Kong court in which [the parties] are proceeding would reject the evidence"); *see also In re Batbold*, No. 21-MC-218 (RA) (OTW), 2021 WL 4596536 at *4 (S.D.N.Y. Oct. 6, 2021) ("the courts in … Hong Kong are … receptive to Section 1782 discovery", citing *O'Keeffe*, *infra*); *see also In re Application of Tianrui (Int'l) Holding Co. Ltd.* (JMF), 19-MC-0545, DI 102 at 6 (S.D.N.Y. Oct. 22, 2020) ("no suggestion … that [Hong Kong] is unreceptive to evidence collected pursuant to Section 1782").

Further, courts have determined that the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from the existence of treaties that facilitate cooperation between the U.S. federal judiciary and the foreign jurisdiction. *See In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (foreign jurisdiction "has indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation"); *In re Application of Imanagement Servs. Ltd.*, No. CIV.A. 05-2311(JAG), 2006 WL 547949, at *4

---

[47] *See* Hui Declaration, ¶¶ 12, 17-18.
[48] *See* Hui Declaration, ¶¶ 17-18.

(D.N.J. Mar. 3, 2006) (same). Hong Kong has ratified the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters of 18 March 1970.[49] As the Third Circuit has found, "the Hague Evidence Convention is in effect between the United States and Hong Kong, which indicates that Hong Kong's courts are receptive to American judicial assistance." *See In re The Application of Kate O'Keeffe for Assistance Before a Foreign Tribunal*, No. CIV. 14-5835 WJM, 2015 WL 5039723, at *2 (D.N.J. Aug. 26, 2015), *aff'd sub nom. In re O'Keeffe*, 646 F. App'x 263 (3d Cir. 2016), cited by this Court in *In re Batbold*, *supra*. Accordingly, the second *Intel* factor, the receptivity of the foreign tribunal to evidence obtained through Section 1782, favors Petitioner's Application.

### 3. Petitioner Does Not Seek to Circumvent Restrictions on Evidence Gathering by the Hong Kong Court

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Here, the discovery sought does not attempt to circumvent proof-gathering restriction. Instead, a party in a Hong Kong legal proceeding is not prohibited from using or acquiring documentary evidence obtained via 28 U.S.C. § 1782.[50]

There is also no reason to believe that any of the discovery sought in the Subpoenas violates public policy. Petitioner does not seek customer account information, state secrets, or attorney-client communications. Moreover, if Respondents reasonably believe that any individual documents present such concerns, Petitioner is willing to consider accommodating such concerns, such as by agreeing to a protective order. *See*, *e.g.*, *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *1 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits this Court to

---

[49] *See* Hui Declaration, ¶¶ 15-16 and Ex. G.
[50] *See* Hui Declaration, ¶¶ 17-18.

impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.").

### 4.    The Scope of Discovery Sought by the Subpoenas Is Limited

The fourth *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). Here, the requests are narrowly tailored and directly relevant to questions in the Litigation. Therefore, whatever burden Respondents may incur by producing the requested discovery, it is both modest and proportionate given the circumstances. Accordingly, relative to the limited requests made in the Subpoenas, the information Respondents have in their possession is of exceptional value.

### CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the Application and Petition for an Order to Conduct Discovery; (b) enter the Proposed Order attached to the Tshering Declaration as Exhibit A; (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas attached to the Tshering Declaration as Exhibits B and C; (d) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Notices of Deposition attached to the Tshering Declaration as Exhibits D and E; and (e) grant any and all other relief to Petitioner as deemed just and proper.

Dated:  July 25, 2022
        New York, New York

                                        SIDLEY AUSTIN LLP

                                        Tai-Heng Cheng

                                        787 Seventh Avenue
                                        New York, NY 10019
                                        Tel: +1 212 839 5300
                                        Fax: +1 212 839 5599
                                        tcheng@sidley.com

                                        *Attorneys for Petitioner Changpeng Zhao*

17