# EXHIBIT O



**Strictly Private and Confidential**
Modern Media HK
7/F, Global Trade Square
21 Wong Chuk Hang Road
Aberdeen
Hong Kong
China

**By Email**
bbwhk_mkt@Modernmedia.com.hk
bbwhk_cir@modernmedia.com.hk

7 July 2022

Our ref: B0023.01/CS/JB/JA

**URGENT - NOT FOR PUBLICATION**

Dear Sir or Madam

**Binance**

We act for Binance Holdings Limited and its related entities ("Binance") and its chief executive Changpeng Zhao.

We write with reference to an article by your journalists Justina Lee and Max Chafkin titled "趙長鵬的龐氏騙局" ("the Article"), which translated to English means "*Changpeng Zhao's Ponzi Scheme*". The Article was published in *Bloomberg Businessweek* in Chinese but where we have included quotes we have used from an English translation. If you dispute any of those translations please advise the basis on which you do so.

The Article is based on a piece published internationally titled "*Can Crypto's Richest Man Stand the Cold?*" (the "Original Article") originally published on 23 June 2022 by *Bloomberg Businessweek* and then subsequently republished in the Chinese language version of the same publication on 6 July 2022 in Hong Kong and a number of other jurisdictions.

Both articles contain a number of grave inaccuracies, falsehoods and extremely serious unsubstantiated allegations of criminal wrongdoing about our clients which were designed to mislead the audience and have caused considerable damage to its business and reputation more generally. As regards the Article published this week, it also bears a particularly serious defamatory meaning of our clients and its chief executive Mr. Zhao. With respect to the meanings derived from both articles,

**T** +44 (0)20 71 777 444
**E** the.team@slateford.law
20 St Andrew Street, London EC4A 3AG

Slateford is a trading name of Slateford Limited
Authorised and regulated by the Solicitors Regulation Authority - SRA number 569298
The term 'partner', if used, denotes a Director or an employee of equivalent standing
The company is registered in England and Wales. Registered Number 08036297
A list of directors is available upon request at head office
Office attendance is by appointment only
Registered office: 20 St Andrew Street, London EC4A 3AG

# SLATEFORD

it is noted that the editors of the Article, having read the Original Article, concluded that it could be summarised with the headline "Changpeng Zhao's Ponzi Scheme". Our clients' rights as against the Original Article are fully reserved.

Where reference is made in this letter to Hong Kong law, we do so having consulted local counsel in Hong Kong.

**Defamatory Social Media Post**

The *Bloomberg Businessweek*'s Chinese edition Twitter account *@BloombergBWCN* tweeted an image of the front page of the magazine edition featuring the Article on 6 June 2022 (the "Tweet"). The front page features an image of our client's chief executive Mr. Zhao with no further content and no link or other connection to the wider article. It is our clients' understanding that this content was also posted to other social media channels controlled by you including Instagram and Facebook, and in that respect we ask that the requests made in this letter are treated as referring to all such channels. Together we will refer to them as the "Social Media Posts".

The Social Media Posts bear the meaning that our client and its chief executive Mr. Zhao are guilty of engaging in serious financial crime, of the type well-known as a "Ponzi scheme". Such schemes will be understood by readers of the business press to mean a scheme where the operator intentionally defrauds investors and uses inbound investments to create the false perception of returns for earlier investors to conceal criminality. This very serious allegation is wholly unsubstantiated and not supported by any evidence. We note that the Social Media Posts do not bear any curative words or context to mitigate this serious allegation.

In accordance with the Defamation Ordinance (Cap. 21) the Social Media Posts are also defamatory under Hong Kong law. There is no evidence to demonstrate the meaning included in the Social Media Posts is true and the publication of such a serious allegation of criminal wrongdoing is neither responsible nor fair. There appears to be no justification to publish such a serious unsubstantiated allegation in Hong Kong, or any other jurisdiction.

We note that the Tweet and Facebook post has since been deleted and take this to be acknowledgement of the fact the Tweet and Facebook post were defamatory and in breach of our clients' legal rights in a number of jurisdictions.

**The Article**

Notwithstanding our clients' rights in relation to the Social Media Posts, the Article bears a number of serious and defamatory allegations made against our clients, including inter alia:

- That our clients participated and promoted an illegal Ponzi scheme, as described above;
- That our clients' business model is illegal and unlicenced and Mr. Zhao is responsible for deliberately breaking the law to further Binance's business objectives;
- That our clients' business operations are akin to an "unlicensed casino";
- That by conducting themselves in this way our client has acted unlawfully and unethically; and
- That our clients' business model is an illegal and fraudulent operation such that Mr. Zhao is liable to criminal prosecution.

# SLATEFORD

These allegations are untenable and no evidence has been provided by your journalists to support them, and mislead the reader that our client and Mr Zhao and have been engaging in illegal activities and significantly and unfairly harm their reputation . While these meanings are most egregious and unqualified in the Article, our clients are also concerned about their inclusion in the Original Article.

Your journalists state in the Original Article and the Article that our clients promoted 'stable coin' TerraUSD to customers as "safe" and "high yield" before going on to state how TerraUSD "*was a Ponzi scheme, critics say…*". These critics are not identified but the clear meaning is that our clients promoted and actively participated in a Ponzi scheme. This reference does not remotely substantiate the broader allegation made in the Article that our clients are operating a Ponzi scheme.

The Article then alleges "*money laundering, fraud, and hacking have been part of the industry, and even the most respectable crypto projects can seem, to the non-laser-eyed, lightly dusted with sketch*." It is then claimed that "*at Binance the sketchiness has a certain completeness to it*" before a list of various US financial regulators that are claimed to be investigating our clients is set out. This      is a clear and deliberate attempt to suggest without foundation the fact of our clients being involved in illegal activity in a manner and to an extent other competitors are not. This creates the clear meaning of our clients being a bad actor and responsible for illegal activity. In fact, the true position is that our clients has a widely-documented track record of investing to prevent and challenge money laundering, fraud and hacking. Indeed, the operation of cryptocurrency means that it is statistically less prone to use in the committal of offences of this nature than conventional banking.

It is also levelled that our client Mr. Zhao "*could wind up under criminal indictment*". This is in response to the (again unevidenced) suggestion that our client has engaged in business practices "*pushing the boundaries of the law*" and that Binance has ignored "*the demands of governments for as long as possible*". This bears a meaning that our client's business practices are unlawful and is further compounded by the suggestion that our client has acted and continues to act in an unethical and criminal manner. The allegation that "*Binance's business model is, in short, rife with potential conflicts of interest*" is used to suggest that insider trading is a tactic used by our client to make money, but is again neither evidenced or substantiated.

The allegations and meanings cited above are all capable of causing serious harm to our client and Mr Zhao, and are not supported by evidence. Consequently there does not appear to be a substantive or defensible basis for reporting them either under the Hong Kong Defamation Ordinance (Cap. 21), or in other jurisdictions in which these allegations have been published.  Indeed, your failure and inability to substantiate your allegations levelled against our client and Mr Zhao is unsurprising because these allegations are false. Indeed, given the severity of the speculative allegations in the Original Article, no adequate antidote is included to dilute the seriousness of the allegations.

The Article continues to be widely circulated to the public, including but not limited to via offline channels. We note that the cover of physical copies carry the same allegation of criminality seen in the Social Media Post. Photos of examples of the physical Article copy being sold at shops in Hong Kong are enclosed to this letter.

**Next Steps**

As a result of the harm caused to our clients by these publications, steps need to be taken urgently to mitigate the damage continuing to be caused and remedy that harm.  Despite this our client remains

# SLATEFORD

committed to avoiding an unnecessary dispute and requests the following steps are taken immediately:

1. You will retract the story in the Article, including by:-

    (a) Removing the online versions of the Article and agree not to republish in any form without prior agreement with our client;

    (b) Ceasing and recalling all physical publications of the Article in all forms and in all territories and agree not to republish it in any form without prior agreement with our client;

    (c) Removing all Social Media Posts featuring the Article and any reference to the said article immediately;

2. You agree to immediately publish a full and proportionately prominent apology and withdraw the allegations made against our client in relation to the Social Media Posts in all of Bloomberg Business' Asia Affiliates' social media, including Facebook & Twitter, in a form of words to be agreed by our client in advance; and

3. You undertake not to repeat the allegations complained of in this letter.

4. In addition to the remedies our clients are entitled to pursue, to seek to avoid the risk of similar errors our clients ask that a meeting be held with your senior leadership and publishing team to rebut the points raised.

Our clients' attitude to its other legal entitlements including damages and their legal costs will be determined by your willingness to swiftly address the harm caused by the publications. In the event you do not agree to the above we must reserve our client's rights to take further action as appropriate and in any jurisdiction where their rights are engaged.

Yours faithfully

*Slateford.*

**Slateford**